And the last case we're going to hear this morning is Sawyer v. Foster Wheeler, and Mr. Nadelink, whenever you're ready, we'll hear from you. Take your time. I'm going to go get some water. Thank you. Thank you. Yes, you may proceed. May it please the court, I'm Eric Nadelink. I represent Foster Wheeler. This is an appeal from a remand order back to state court. Foster Wheeler is … We do not get any appeals on remand orders, and they put in a new provision. 1447-D. You have every right to come up here. I apologize for that, but 1447-D is what it is. So Foster Wheeler made main propulsion boilers for Navy warships, in this case in the 1960s primarily. Mr. Morris claimed that he was exposed to asbestos from working around some of those boilers. These are unique, custom-built pieces of military hardware whose design and performance is subject to thousands of hours of consultations with the United States Navy, hundreds of pages of military specifications, review, revision, approval by the United States Navy before these things ever see their way to the United States Navy warship. They are the quintessential Navy contract that's subject to the military contractor defense. The court has determined, this court, that cases like this involving Navy equipment vendors are readily removable to federal court, pursuant to 28 U.S.C. 1442-A1, which is the Federal Officer Removable Statute. Now, appellees assert many claims against Foster Wheeler in this case, but for our purposes, we can narrow it down just to about three, I think. Number one, they assert a design defect claim. That Foster Wheeler incorporated some asbestos-containing parts in their boilers, and that made them defective. That claim is in strict liability and is in negligence, according to their complaint. Number two, they assert a failure-to-warn claim based in products liability. In other words, that these boilers or the parts thereof should have been labeled with an asbestos warning or should have been accompanied by a manual that had an asbestos warning in it. It's a products liability failure-to-warn case. Third, they assert a failure-to-warn claim that's based in simple negligent conduct, that there was a Foster Wheeler representative who was at the shipyard, and that representative should have personally provided a warning to Mr. Morris and protected him from exposure to asbestos. So those are the three types of claims. As to the first two types of claims, the design defect claim and the products failure-to-warn claim, it's well settled in this circuit, and not disputed in plaintiff's brief, that those claims are readily removable to federal court pursuant to 1442. I argued the issue last fall in the Ripley case before Judges Thacker and Traxler and Diaz, and the issue has been decided. In this court, health of the government contract of defense is available in asbestos failure-to-warn cases for military contractors. You don't have to rule it's available. We just have to find whether it's colorable, right? Yes, sir. You're correct. Can I just ask just, Morris was a civilian shipyard worker, not on board a ship, and the argument is that nothing would have prevented Foster Wheeler from warning about dangers to asbestos exposure. Correct. Is that not correct? Well, there's two ways. You're correct, but there are two ways. There are two ways that plaintiffs claim that Mr. Morris was not warned. One was that he was not warned because there was a lack of a warning in written materials on the product, or that came with the product. And secondly, that he was not warned physically by Mr. Foster Wheeler, who was at the site. As to the written warning on the product, no one disputes, and the court below actually acknowledged, that the federal government did prohibit Foster Wheeler from providing those warnings. And the case is removable on that grounds alone. There were other ways that the argument, though, as I understand it, is that there were other ways that Foster Wheeler could have provided notice that were not prohibited. Plaintiffs are claiming that. And that's my question. Yes. Is that not correct? And if it's not correct, why is it not correct? They're incorrect in their argument, but it doesn't matter, because there are two claims, one of which is removable. Their arguing claim, too, is not removable. Could you just sort of focus, just sort of zero in on my question? They are saying that Morris could have been warned in other ways. Is that not correct? They are claiming that. They are not correct. Okay. And why are they not correct? Well, first of all, with respect to the written warning, they are not correct, because that warning was, as is found by the district court, that warning was prohibited by the Navy. Now, that ends this case. Okay. But you told me that before. I'm trying to get beyond that answer to my question, which is, is there any other form of warning that could have been given? Well, there were engineering drawings that Mr. ---- That oral communications had been made at the site. No. So the Foster ---- what plaintiffs are arguing there ---- It's a factual question. I'm just asking. Could other warnings have been given that were not ---- Maybe by his employer, not by Foster Wheeler. I'm sorry. I'm not ---- We're not communicating. So you can just sort of keep on going. Foster Wheeler could not have provided that warning, because the United States Navy had decided in the review process for these contracts that no warning was required with respect to the boiler or the component parts of the boiler.  You're saying that the Navy prevented Foster Wheeler from offering warnings to workers in the shipyard's boiler shop. That's what you're saying? I'm ---- Yes. Okay. Yes, I am. The Navy prevented Foster ---- Well, the Navy, in the exercise of its discretion ---- How could the Navy prevent Foster Wheeler from making a communication to a civilian employee? The Navy made a determination in its discretion that no warning was required for the components of that boiler. Is that the same as no warning could be given? I'm sorry to ---- Well, that's not the ---- The standard is that the Navy approved what Foster Wheeler did, that they reviewed and approved it, and not that they actually prohibited Foster physically or specifically prohibited Foster Wheeler from doing something, but that they looked at what Foster Wheeler proposed to do and said, yes, in the exercise of our discretion, we think that's the right thing to do. And that's what they did. And they said that there's no warning required with respect to that. And with respect to the design defect claim, there's no dispute that our government contractor defense as to the design defect claim entitles us to removal, regardless of the other claims, that our military contractor defense entitles us to removal as to the failure to warn as to the product's claim, that is removable. Plaintiffs are arguing that the simple negligence claim isn't removable, but that doesn't matter if the other two claims are removable, then the case is removable. That's not to say that we agree that Foster Wheeler could have provided a warning in the shipyard to Mr. Morris. They could not. The Navy had already determined that the boiler itself should not have a warning. The Navy had determined that the components of that boiler should not have a warning. The Navy had determined that the manual that went with that boiler that identified every single piece in that boiler did not require a warning. The Navy determined that the engineering drawings that Mr. Morris was to use and his coworkers to assemble the boiler,  but what plaintiffs are suggesting here is that somehow because they didn't specifically go to Mr. Foster Wheeler, who arrived at the shipyard and say, we've already decided that none of these things should have warnings, but you, sir, you could have given a warning. My understanding is that the Navy only prohibited warnings on equipment located in shipyards used to build Navy ships. These were Navy ships. These were Navy ships. These are Navy boilers. They were both commercial ships and Navy ships built at the shipyard. The ones we're talking about here are Navy ships. And so the idea that because plaintiffs are arguing here that somehow because there wasn't also a specific determination by the Navy that a representative who was being sent pursuant to the exact same contract where they had already decided that no warnings had been required, that this guy could have gone there and provided a physical warning, and that negates our government contractor defense, the exception would subsume the rule. Not only are you not entitled to defense, but you're not even entitled to remove it and have your government contractor defense heard in federal court just because each – let's picture a hypothetical situation. A hypothetical situation where you have a military contract manufacturer who manufactures helicopters for the Army, and the pilot of the helicopter is injured because the seat belt doesn't work on the helicopter. Now, the Army reviewed and went over all the specifications for that seat belt, and they approved it. And they said, this is the seat belt that we want. And they looked through the manual and all the written materials, and they said, yes, these are the correct warnings. These are the incorrect instructions for this seat belt. Now, that would normally entitle you to a defense under the government contractor defense and to removal to federal court. But what plaintiffs are suggesting here is that because in that hypothetical case, because a representative of that contractor could hypothetically still have walked in and told the pilot of that helicopter. No, they simply have put a notice on – posted a notice on the wall, for instance. Well, I mean, it wasn't our wall. I mean, we can't post notices at Bethlehem Steel Shipyard. This is not Foster Wheeler Shipyard. My only point is that I understood it, perhaps factually incorrectly, that the Navy only prohibited warnings on the equipment. No. The Navy approved Foster Wheeler's engineering drawings. It's in our brief that Mr. Morris would have used specifically. That's not really responsive to my question. I apologize. I'm not understanding it then. Okay. You say at some point that, well, I thought they only prohibited labels on the equipment, but you're talking about design drawings, and I'm not quite sure how that responds. And the other thing I'm having a little trouble understanding is sometimes you say that the Navy determined that a warning wasn't required, but the fact that a warning wasn't required doesn't mean that a warning couldn't have been given. I think I understand your two questions. Okay. I think there's two questions there. I'll take the second one first. The standard under Boyle and under – Boyle's eye that you gave us, wasn't it, on the helicopter? Well, it was similar. That wasn't a standard to warn case, but it was a very similar case, factually. But so under Boyle and its progeny that have extended the military contractor defense to failure to warn cases, what they have said is if a government actor exercises its discretion to review the content of manuals and written materials and then approves that, that is the exercise of discretion that triggers the military contractor defense. That's every circuit in the land that's ever addressed the issue without exceptions. So there is no case out there that says you have to prohibit a warning. The exercise of discretion that triggers the defense is I reviewed and I approved the manuals or the written materials that you provided, and that's what happened here. So that's the second question. The answer to the first question, I think, is as part of this contract to build these boilers, the Navy supervisor of ships who oversaw the execution of the contract by Foster Wheeler, and this is in Mr. Schroep's affidavit in the joint appendix, what he did is he reviewed the design of the boiler itself and whether asbestos would be used in the design, and according to military specifications, it had to use asbestos because the military said it had to. Then they reviewed the drawings, all the engineering drawings for that boiler, including anything that you wanted to put in those, any communication that you wanted to put in those engineering drawings that said look out for this, there's a hazard of that, be careful of this when you're installing the boiler, all that had to be included in the engineering drawings. Those engineering drawings were reviewed and were the subject of an exchange of revisions and ideas between the Navy and Foster Wheeler, and ultimately the Navy said okay, these are the final drawings and we're happy with them and they don't contain an asbestos warning. Then there is a manual that came with the boiler that tells you how to operate the boiler, it tells you how to maintain the boiler, it also tells you how to install the boiler. These are required things. And there's a provision where you might provide various types of warnings inside that manual for the installation of a boiler or the erection of a boiler, which is what Mr. Morris did. And the same review and approval process occurred with respect to that manual that tells you how to install the boiler aboard the ship or how to build the boiler. And it lists every single part of the boiler, including the asbestos-containing parts, and if there should have been an asbestos warning, it should have been in that manual, but the Navy, when it reviewed that manual, said we're good with it just like the way it is. So the Navy exercises discretion with respect to the design and content of the boiler, warnings on the boiler, warnings in the manuals, and on warnings in the design drawings that would be used to construct the boiler, the blueprints. All of those things the Navy exercises discretion, and the district court accepts all of those things and says that's not even a dispute. We agree that that's true. Well, I understand your argument to be that the district court obviously relied on the fact that apart from those warnings or the absence of those warnings, there could have been an oral warning by the employer in the workplace and said because that's one theory of negligence and it is not regulated by the Navy, therefore it's not protected or not removable. But do I understand your argument is that that address is only part of the plaintiff's claim and if any other part is removable, the whole case comes up? That's exactly correct, Judge. There are two or three other claims that sound in products liability, physical warnings on products that are independently removable and entitled us to be in federal court on those. Even if I was wrong about what I just said about, you know, that the Foster Wheeler engineer, that the government contractor of defense covers the engineer, it doesn't matter. What the district court did is it allowed itself to be distracted in only deciding this negligent conduct claim and not realizing that the case was also independently removable on all the plaintiff's products claims which still exist. We only need our government contractor defense with respect to one of those claims to get us into federal court. And the judge and the plaintiff said don't worry about those claims. I'm just going to pretend they don't exist. The only issue in this case is our allegation of simple negligence by a Foster Wheeler employee and that's all you have to decide, Judge. And the judge was distracted by that and didn't say wait a second, there's actually three other reasons why this case is removable. And they're not in dispute. That's what this comes down to. Anything else? No, sir. Thank you. All right, Mr. Uttermole. Good morning, Your Honors. I'm Jeff Uttermole on behalf of the family members of the deceased Joseph Morris. I'm here today with my colleague, Will Minkin. There is no plausible the Navy made me do it defense here because the Navy exercised no discretion over warnings at the time and place in question. Throughout their materials, the Navy specifications are only alleged to have concerned warnings affixed to boilers on the vessels and in shipboard operational manuals for use by onboard engineers and other personnel of the Navy. Now, permanent shipboard warnings are irrelevant here because the decedent Joseph Morris spent all of his time as a civilian boiler shop man. He spent no time on a Navy ship, never went onboard a Navy ship. Why is that relevant? It's relevant because, for one thing, the warnings that are supposedly prohibited by Navy specifications only concerned shipboard equipment. So he was never in contact with shipboard equipment. He was in contact with shipboard equipment.  And those boilers were designed and specified by the Navy. Isn't that right? Yes, that's right. And it doesn't matter whether they were manufactured in Harrisburg or in Frederictstown or wherever. If they're being built under specifications for the Navy and those specifications are under attack, the statute anticipates removal, right? Well, no, because of the nature of the specifications. I'd like to direct the Court's— The specifications don't have to prohibit notice. They just have to approve in detail all of the specifications for the boiler, including the warnings that are contained on the boiler, on the drawings, on the assembly documents in this case. I gather that the argument that is made, and maybe you should address it, is that while you have a negligence claim that an employer in the workplace for Foster Wheeler did not advise the employee or the worker of asbestos risk, that negligence claim therefore denies removal of any claim. And there are claims that are clearly removable under Ripley and all the other cases. Well, there was much made of that argument during the presentation here orally. Is that wrong? Well, I think it is wrong, but the— Well, let me ask you to break it down, then. What are your theories of liability here? How many counts do you have, claims? There are several. It's under negligence, strict liability. Strict liability, product liability, negligence. Three or four? How many? It's in the complaint. It's a short-form complaint, and it lists approximately six. That's my recollection, six different counts. Your Honor, that argument was that— Do you agree that some of them are removable? Not at all, Your Honor. None of them are removable? They're not removable, Your Honor. Any one? Any one. That's the way I wanted to frame it. Is any single one removable? No. And that argument that was made by counsel today was not in the brief, and we would say that that was a waived argument because it was not argued in the brief. We certainly would have addressed that. So what do you see as the issue before us? Is it just the failure to warn asbestos claim, the failure? Is that? Yes, Your Honor. That's what was briefed and argued by— And because that's the one that the district court's decision turned on? Well, it's the one that was argued. It was the one that was argued by Foster Wheeler, and so we would have certainly addressed that in our brief if that argument had been made. That's been made today for the first time. I'd like to address the Court's attention to Mr. Shrope's affidavit. Mr. Shrope worked for Foster Wheeler, eventually became Foster Wheeler's president. And in his affidavit, and this is in the joint appendix at page 334— Let me just go back to my last question. I think this is the hurdle that you're going to have to address. Do you agree that if any one of your claims is removable, that the whole case comes up? Comes up. I think the answer has to be yes. The problem— What's your answer? Yes. All right, so we can look at any one of your claims, and if the elements of the claim fall within the specifications of the Navy, then there's a colorable. We don't have to find there's an actual defense. We just have to find it's colorable, which justifies removable under the statute, right? Your Honor, the arguments— Answer my question, if you would. The answer is no, because those arguments were waived. They're not waived. Our whole removal here covers that entirely. I mean, I don't understand how you say it's waived. The whole argument is that they have colorable defenses based on the specifications of the Navy, and for you to say that they're waived is pretty bold. Would we have to send it back? I mean, the district court addressed primarily the failure to warn the claim. Do we have to, for instance, consider—she assumed without deciding that removal was timely, for instance. Well, that's correct, Your Honor. Certainly that issue should be addressed if the case were to be sent back, and these arguments that are beyond alleging that there was an affirmative requirement to do an affirmative prohibition against warning would have to be addressed. In Mr. Schroep's affidavit, this is page 334 of the record, he specifically puts in his affidavit that these warnings that are supposedly prohibited by specs are limited to those provided to shipboard engineering officers for use during the life of the boiler on the ship. It's important to note the timeframe here. Mr. Morris was never on board a ship where he was during a year-long process of assembly of the boiler. So he was never on board ship, and that's what these are limited to. It has to do with the Navy, the contractor defense. I mean, the fact that a helicopter is made in Connecticut in a private facility under the specs for the government by United Technologies doesn't mean it has to be in combat or has to be on Navy base or anything else. It's the fact is that when the government specifies a product, the contractors don't exercise discretion with how to carry out that product. Then they enjoy certain defenses based on the fact that the government specified it. Now, if they specified it where the boiler was first built or where it was assembled at Bethlehem Steel, it doesn't make a bit of difference. If your basic complaint, and this is what they address in their grounds removal, your basic complaint is you address the warnings give in various aspects with respect to these boilers. Foster Wheeler manufactured marine boilers and auxiliary equipment for use on Navy ships pursuant to contracts and specifications executed by the Navy. Foster Wheeler has confirmed that it manufactured boilers for use on Navy ships built at Bethlehem Steel Sparrows Point. The basis for removal is that the manufacture and sale of boilers and auxiliary equipment for the Navy, including all aspects of warnings associated with that equipment, Foster Wheeler was acting under an officer agency of the United States in the meeting 1442A. Now, that is their defense, and they're saying that all aspects of warnings that you have alleged were colorable defenses or specified by the Navy. It may turn out to be that not every one of them is so, but as you agreed, if you have one of your claims challenging the warnings that the Navy did specify, it's a colorable claim. So these alleged prohibitions against warnings were only as to shipboard equipment, and this was not shipboard equipment. This was a year-long assembly process. It did not become shipboard equipment until after that process. They were manufacturing shipboard equipment. I'm sorry? They were preparing shipboard equipment. They were assembling. Assembling shipboard equipment. They were assembling. That's fine. And this was completely unassembled, and it took off. That's what they were doing with that helicopter in the Boyle case. In Boyle, what the court said was there has to be a significant conflict between operation of state law, and applied to this case, it would be the requirement of a warning. There has to be a conflict between that and then conformance with reasonably precise specs. And there was a clear conflict in Boyle because there the helicopter had to, in order to be spec compliant, it had to have an outward-going hay patch, and that's what caused the death. There wasn't any requirement that this fellow work on a ship, on a Navy ship. You're not saying that, are you? There was no requirement that. He wasn't on Navy ships. He was a dry land guy. He was a civilian shipyard worker who was always in the boiler shop. And for that year-long process, he was never exposed to shipboard equipment because this was. . . I thought you said he was assembling shipboard equipment. No, he was assembling boilers, many of which went to civilian ships. And there's an. . . I thought you were dealing here with Navy ships. Well, that's an allegation. There's actually no proof in the record. But some of them. . . I'm sorry. Some of them were Navy ships. We don't know that they all went to civilian ships either. During the. . . there's no contracts here in the record. No specific evidence showing that Joseph Morris actually worked on a Foster Wheeler boiler that then went to a Navy ship. There's no specific proof in the record. Where are your allegations? I looked for the complaint, and it's not in the record, is it? The complaint is in the record, Your Honor. It is? I'd be appreciative if you could direct me to it. On the appendix, maybe. It's got to be in the record somewhere. Did you attach it to the. . . It's a short-form. . . It's a short-form complaint, Your Honor. But it just refers to various paragraphs of something that's not here. Of a long-form complaint. Where's the long-form complaint? Is it in here? It's not in the joint appendix, Your Honor. Is it in the. . . where is it? In the state court? It would be in. . . Could you. . . could counsel provide us with a copy of the long-form complaint? Yes, Your Honor. It seems to me that's material, isn't it? I mean, for instance, your first claim is strict liability. You're sure it's not in the. . . it's not in the record in the district court? I do not believe it is, Your Honor. Okay. Oh, it's not even in the district court? The short-form complaint is, and I. . . Well, the short-form says basically strict liability and then refers to a bunch of paragraphs. What is your strict liability claim? The claims in this case are primarily the. . . Tell us what the strict liability claim is. Yeah. So it's a failure to warn, failure to provide safety precautions based on negligence and strict liability. Strict liability says the product's defective because it doesn't contain warnings. Isn't that right? Yes. Okay. And their argument is that those warnings on the boilers that for which you're claiming strict liability were the absence of warnings was approved by the Navy as part of its comprehensive specs. That's their argument. And they say that gives them a colorable defense. Now, there have been a lot of cases decided in the Third Circuit, Second Circuit, Ninth Circuit, Seventh Circuit, and in Ripley, all of which recognize removable on that type of situation. Yes, Your Honor. And the difference is in those cases, they were all cases involving where you had a party working on Navy premises and. . . What's it got to do with the Navy premises? There's nothing in the removal statute that requires that or under the doctrine. What's required is somebody be manufacturing goods for the government under specs determined by the government and that the claim challenges those specs. And Boyle said, but conflict there must be. And so arguably in those cases. . . What's that got to do with the fact he's on the ship? Because arguably in those cases that Your Honor is alluding to, arguably there could be a conflict because the specs only address shipboard equipment once it's delivered to the Navy and the Navy doesn't want warnings allegedly on board ship. And the. . . Our case is different. It does not involve that. In Mr. Schroep's affidavit at 334. . . I must say I'm missing your argument altogether. Where are these. . . Where are these boilers manufactured? So they're. . . They're. . . They're manufactured off-site. Where. . . Where are they manufactured? I don't know the specific. . . You don't know? It's at a Foster Wheeler factory. Where? And then. . . I don't know the specific location. And then it's completely unassembled. It's not at the shipyard. Yeah. And a completely disassembled. . . All the parts are then shipped to the shipyard, to the boiler shop. The parts are all manufactured by Foster Wheeler. Right. And they contain all the components necessary to assemble for a boiler that's going to be installed on a ship. Including the asbestos. Including asbestos, including manuals, including drawings to assemble them. Not the manuals that are talked about in the specifications. And that's the difference. So the specifications. . . Aren't there assembly manuals? Not referenced in the specifications. And not referenced in the affidavits. No, I said aren't they in this case? In other words, the components. . . I'm having difficulty communicating. I don't know if you're hedging or what your problem is. It would be good if we had a free dialogue and we can get to the core of the problem. As I understand it, these boiler components are manufactured by Foster Wheeler and their own factories. Under specifications provided by the Navy. Those components are shipped to Bethlehem Steel shipyard for assembly and later installation on the ship. Is that right? Correct. And your employee is located at the Bethlehem shipyard assembling these boilers. Correct. So as in the Shrupp Affidavit at paragraph 21, the Navy exercised intense direction and control over written documentation to be delivered with its naval boilers. So these naval boilers were not delivered until after they were assembled. They were not accepted by the Navy until after that year-long process. And continuing further with the Shrupp Affidavit, intense direction and control over written documentation. Do you find that material to the issue at all? It's the next phrase that's key. If you're up in northern Pennsylvania and you're assembling a particular component that's later going to be incorporated and that particular component is negligently designed and injures an employee, the manufacturer says, oh, I did it the way the Navy wanted it. Isn't that a colorable defense that permits removable of that claim? That would be. But there's no evidence. So it doesn't have to be a completed boiler delivered and accepted by the Navy. It has to be constructed pursuant to specs that the Navy provides. And here the specs never reached this unassembled material because all the specs say in the Shrupp Affidavit, Paragraph 21, it says, documents and manuals that could be used as needed by shipboard engineering officers during the life of the equipment. Would we not have to send this case back anyway just for an assessment of whether any of the claims were removable? Your Honor, because the specifications did not reach these materials at the time and place, Boyle said the conflict there must be. And there's no significant conflict between the requirement to warn and the conformance with these specs. I'm very sorry not to understand how that answers my question. If any of your claims are, doesn't the district court have to consider whether any of the claims are colorable? I'm sorry, removable? Your Honor, I go back to my point that the arguments were made as they were by Foster Wheeler to the district court and the district court considered those arguments as they were made and the court addressed the arguments that were made. I would not think that additional consideration would be required. The noticeably absent from the joint appendix are the actual specifications. And remember, Boyle requires reasonably precise specifications in conformity with them. Here the court can't determine how precise or general the specifications actually are because they're not in the record. And apparently realizing that it hadn't made the record, Foster Wheeler filed 142 pages of specs, most of which, in a motion to supplement, most of which are completely irrelevant. And the few pages that are relevant— We haven't ruled on that motion. I'm sorry? We haven't ruled on that motion to supplement. Correct, Your Honor, it's pending. Under Rule 10E? It's a motion to supplement, Your Honor, I believe so. The few relevant pages actually require warnings about the dangers of asbestos. I'd like to highlight that to the Court in my motion for use of documentary evidence. I've got hand-numbered page numbers at the bottom of those pages. I'd just like to highlight a couple points. On page—hand-numbered page 3, it says, the importance of delivering—this is at the bottom of the hand-numbered page 3. At the very bottom it says, note, the last paragraph. It says, the importance of delivering— Are these exhibits in another case somewhere? These were exhibits to the motion to supplement by Foster Wheeler. Are they exhibits that are filed in— It appears so, Your Honor. In some other court? It appears so from the heading, which gives different page numbers. I see it. Dates that it was filed. 14, 2016, page 136. Those are other—that's a reference to some other case. That's what I'm saying. It's a court record from somewhere. From somewhere, that's right. I don't know whether it's this case or not. It's not this case. Well, how about the state court proceedings in this case? I don't know where they came from. You don't know? Could it be the state court file in this case? You don't know? I didn't file this document, so I don't know. This was Foster Wheeler filed as a motion to supplement. At the bottom of that page, it says, Note, the importance of delivering these manuals with each unit of equipment, which, remember, this would only happen after Mr. Morris had completed his work, cannot be too strongly emphasized, since they are of great value in the installation of the equipment and in the training and indoctrinating the ship's crew. So that's what these warnings, to the extent they were regulated by specifications, that's what they had to do with. They had to do with indoctrinating the crew and to be useful during the life of the equipment. That's what paragraph 21 of the Shrove Affidavit said. This did not become shipboard equipment until it was delivered to the ship. And at that point, any warnings that would have been provided or not provided would have had no effect on Mr. Morris because his work was already done. He had to be warned in the civilian boiler shop. I gather your strict liability count claims that there should have been a warning on the boiler components before they were fully assembled, a warning of asbestos. Is that what your point is? There was no warning about the danger of asbestos, certainly. Can you answer my question? I'm sorry, could Your Honor rephrase it or repeat it? My question was, your strict liability count claims that the boilers were defective because they did not include warnings on them that there was asbestos there, at least at the time your client worked on them. Is that true, yes or no? I don't believe so, Your Honor, because the warnings that we're asking for are not written warnings. We wouldn't want a warning fixed. A strict liability on a product can't rely on oral warnings. You buy a product and the warning has to be on the product, doesn't it? You buy a lawnmower, you're not relying on the employer, the manufacturer or somebody else to tell you. You're relying on the notice on the product itself, and you have a strict liability claim that the boilers were defective because they lacked warning of asbestos. No, because the boilers didn't exist at that point. There were a bunch of parts. Components. Components. So the warning should have been on the asbestos. That was my question. You're claiming that there should have been warnings on the components when they were assembled so that he could have read that. There should have been a warning on the asbestos. Well, the asbestos is in the components. It's already assembled. It's already in the concrete, right? No. No. In fact, it was shipped unassembled, and then the asbestos is then applied during the assembly process. It couldn't be. It's a liner-like. It's an insulation liner. And it would be, if it was shipped to the shipyard with the asbestos already on it, it would fall apart. It wouldn't be efficacious. Fair enough. So your argument on strict liability is those products were defective because they did not include a warning about the asbestos. The asbestos did not have a warning itself. Yes, that's correct. And if the government precluded such warning or did not want such warning for various reasons, even though it enjoyed the risk, then Foster Wheeler could never have put those on as you requested in your complaint or as you argued in your complaint. Well, it's not shipboard equipment at that time. It's the time and place. The time and place that the warning should have been given were not regulated by the specifications. Throughout these materials, throughout the affidavits and throughout the specs themselves, it has to do with shipboard equipment once it's on the ship. And for the benefit of the ship. All right. I think we understand. Your red light's on. You've been going through the red light. Thank you, Your Honors. All right. Mr. Nadelink, you have a few minutes. The court has this exactly correct. I have gone and got, I went and got the master complaint from the city of Baltimore. It's not in the joint appendix. It's referred to in the complaint. In the record below? It's incorporated by reference in the record below. It's not in the record below. You said it's in the, you had to go to the circuit court of Baltimore City to get it. I actually went to my local council in Baltimore and they had it. They went. It's not in the district court record. I do not know the answer, the specific answer to that question. You don't know whether we got the complaint or not? We have the short form complaint, which incorporates by reference. But it cross-references something that's not in there. It cross-references this long form complaint that was filed back in 1990. The record on appeal consists of what's in the record in the district court, not what's in the record over there in the state court, I don't think. That may or may not be the case. But the point is that you're exactly correct, that you don't actually need to read the allegations in this master complaint to know that the strict liability claim is a product's claim. Any warnings claim with respect to that product's claim is a warning on the product. That was your answer to my colloquy earlier. Yes, ma'am. The lower court in this case found in the remand order and said, not only do they have failure to warn claims, they actually have a design defect claim in that strict liability claim. There's a design defect claim that says the boiler was designed defectively. The district court found, plaintiffs do not dispute that the boilers were built to Navy specifications and that the Navy controlled the warnings that accompanied the boilers. This is a quote, Joint Appendix 1098, Joint Appendix 1102, Foster Wheeler's affidavits established that the Navy had precise specifications, practices and procedures that govern the content of any communication affixed to machinery supplied by Foster Wheeler to the Navy, and the Navy would not permit Foster Wheeler to affix any type of warning or caution statement to a piece of machinery intended for installation on a Navy vessel. That's the lower court's ruling in this case. Mr. Schroep's affidavit demonstrates that the Navy provided Foster Wheeler with detailed specifications governing warnings and written information that accompanied Foster Wheeler's boilers when they were delivered to the Navy, Joint Appendix 1103. And Thomas Schroep's affidavit, the Navy exercised intense direction and control over all written... You're reading out of the district court's opinion. Yes. Yes. So all we have to do is take the district court at its own word, and if there's a products claim, the case is removable. But the district court became distracted in the argument and only ruled as to the negligence claim and not as to the products claim. But that products claim does exist, and if it exists, the findings of the district court, we don't have to get any further. The case is removable just on the findings of the district court based upon the products claim that the district court didn't address. You're right through the red light, too. Thank you. We'll come down in Greek Council and adjourn court for the day. This oral court stands adjourned until this afternoon. God save the United States and this oral court.
judges: Paul V. Niemeyer, Robert B. King, Allyson K. Duncan